## NATIONAL MUT. CASUALTY CO. v. LAMBERT.

### No. 3825.

Court of Civil Appeals of Texas. Beaumont.

April 3, 1941.

Rehearing Denied April 9, 1941.

Albert Maverick and Lamar Cecil, both of Beaumont, for appellant.

Collins, Williams & Garrison, of Lufkin, for appellee.

O'QUINN, Justice.

This is a compensation insurance case. Sheehan Pipe Line Construction Company was the employer; Claude Lambert, appellee, the employee; and The National Mutual Casualty Company, the compensation insurance carrier. On September 29, 1939, while engaged in the course of his employment as an employee of Sheehan Pipe Line Construction Company, Claude Lambert received an injury for which he claimed compensation. He filed his claim before the Industrial Accident Board. On June 15, 1940, the Board made its final ruling and award, and appellee gave notice that he would not abide said award, and duly filed this suit in the district court of Jasper County, Texas, to set aside said award, and to recover compensation as for total and permanent disability.

This suit was filed June 24, 1940, and citation served on Hon. Walter C. Woodward, who was then Chairman of the Board of Insurance Commissioners for the State of Texas, on June 27, 1940, who was agent and attorney in fact of appellant, the defendant, having been duly· designated by appellant as such to receive service of citation. On that date, June 27, 1940, Woodward by registered mail forwarded copy of the plaintiff's original petition and copy of citation, to appellant at its home office at Tulsa, Oklahoma, and in his letter of transmittal called appellant's attention to the fact that the citation was issued on June 24, 1940, and was returnable on July 22, 1940. This was received and acknowledged by appellant on June 29, 1940. This was 25 days before appearance day. The term of the district court of Jasper County, at which the judgment against appellant was had, convened on July 22, 1940, and ended on August 17,

1940—a four weeks term. The appellant filed no answer and on July 26, 1940, judgment by default (after hearing evidence) was rendered against appellant in favor of appellee in the sum of $6,208.38. This represented in lump sum the amount adjudged to appellee after allowing discount as required by law. The judgment was filed and entered upon the minutes of the court on July 26, 1940, the day of its rendition.

On August 10, 1940, appellant filed its motion to set aside the default judgment entered July 26, 1940, and to grant it a new trial, and alleged in its motion various matters for the purpose of showing that its failure to file answer as cited to do was not intentional, nor the result of conscious indifference on its part, but was due to mistake or accident, and further alleged that it had a meritorious defense to appellee's suit; and further that the judgment was grossly excessive; and that it would proceed to a prompt trial of the case on its merits, and would defray any expenses which appellee may have incurred in obtaining the default judgment. Appellee answered the motion by general demurrer, general denial, several special denials, and pleaded matters attempting to show that appellant had been consciously indifferent to the cause, or inexcusably negligent in failing to answer, and alleged that the judgment rendered was just and fair, and that it would work a grievous wrong to appellee to set aside the judgment and allow a trial of the cause to be delayed as a trial could not be had at that term of the court, and attached to his answer numerous exhibits of letters and documents connected with and had in connection with appellee's claim and suit for compensation, offered for the purpose of showing that appellant was fully informed of the filing and pendency of the suit, and the appearance day of the term of the court. On August 12, 1940, the court, "after hearing such motion and the evidence adduced in support of such motion," overruled the motion. This appeal is from that order.

On said date, August 12, 1940, appellant filed its answer consisting of a general demurrer, general denial, and specially denied (a) that plaintiff, Claude Lambert, sustained any injury while in the employment of the Sheehan Pipe Line Construction Company, and alleged that if appellee was suffering from any character of disability, that same was the sole result of disease or infirmity existing prior to the date of his alleged injury; and (b) that if plaintiff, Lambert, had suffered any character of disability, which was denied, that same was slight and only temporary; and (c) that if plaintiff was then suffering from hernia, that same was not sustained in the course of his employment, but existed prior to the date of his alleged injury. In this answer, there was no plea of meritorious defense.

Appellant's first proposition reads: "It was error for the trial court to overrule and refuse to sustain appellant's motion to set aside the default judgment rendered in this cause, for the reason that the failure of the appellant to answer before judgment was not intentional nor the result of conscious indifference on its part, but was due to a mistake or accident; and further, because appellant's motion to set aside said default judgment and the evidence adduced in support thereof set up a meritorious defense, and such motion was filed at a time when the granting thereof would not have occasioned delay or worked an injury to the appellee."

The term of the court at which the judgment was rendered convened on July 22, 1940, and ended August 17, 1940. It was a four weeks term. The suit was filed June 24, 1940. Citation was served on Hon. Walter C. Woodward, Chairman of the Board of Insurance Commissioners, who had been duly designated by appellant its agent and attorney in fact to receive service of citation, on June 27, 1940. On that date, June 27, 1940, said Woodward by registered mail forwarded copy of the plaintiff's original petition and copy of the citation to appellant at its home office at Tulsa, Oklahoma, and in his letter of transmittal called to appellant's attention the fact that the citation was issued on June 24, 1940, and was returnable on July 22, 1940. Woodward's letter was received by appellant at its home office on June 29, 1940. This was 25 days before appearance day. The letter from appellant's home office to Walter C. Woodward acknowledging the receipt of his letter transmitting to appellant the copy of plaintiff's petition and copy of citation was signed by "George C. Massey, Claim Department." A copy of this letter was mailed from appellant's office by Massey to C. Villiva, Beaumont, Texas. Villiva was an agent of appellant. Appellant also had a lawyer, Hon. Lamar Cecil, residing at Beaumont, but he was in no manner notified of the pendency of the suit. The motion to set aside the default judg-

ment was not filed until August 10, 1940, two weeks after the judgment was rendered.

Hon. Lamar Cecil, attorney for appellant, and who attended to matters for appellant in this territory, testified that on August 7, 1940, he received a long distance telephone call from Mr. J. A. Tillotson of Tulsa, Oklahoma, Assistant Supervisor of Claims in the Home Office of The National Mutual Casualty Company at Tulsa, and who had charge of compensation insurance claims carried by said company, and who told him that he, Tillotson, had overlooked appellee's case then pending at Jasper, Texas, and that he, Cecil, at once went to Jasper to see the status of the case, and found that judgment by default had been rendered against the company on July 26, 1940; that he immediately returned to his office at Beaumont and prepared the motion to set aside the judgment, and forwarded copy of the motion to counsel for appellee, which motion was filed on the 10th. This was on Saturday of the next to last week of the term of the court. Hearing on the motion was on the 12th. The only witness connected with appellant's home office offered by appellant was Tillotson. His testimony fills 27 pages of the statement of facts. We shall not undertake to set same out by question and answer but will give what we deem the essential parts in substance. He testified that he was Assistant Supervisor of Claims and had charge of workmen's compensation claims; that all such claims were supposed to pass under his jurisdiction, and that generally they did; that "once in a while I am out of the city, or something like that; but they are supposed to be under my supervision"; that some "four or five or six days ago" he discovered the file of the case containing copy of the petition and citation in the case; that he did not know how it got there; that he at once put in a long distance call to Mr. Cecil, attorney for the company, at Beaumont, asking that he check up on the case, and advise what to do; that he did not intentionally overlook the matter, that it was an oversight on his part; that the citation and copy of petition was received at his office on June 27, 1940; that during that week (the week embracing June 27th) he was for some four days beginning on the 26th attending the "Industrial Commission Docket for the Oklahoma Industrial Commission"; that he was out of his office four days; that when he got back to his of-fice he did not see the citation; that "a short time after that I became ill with an infected throat" and was in bed "just about a week," under a doctor's care and unable to attend to business; that it was "around the 20th or 21st when he returned to his office," at which time he had to go to Oklahoma City to attend Industrial hearings and was there for "two or three" days; that the letter of date June 29, 1940, from appellant's office to Walter C. Woodward, acknowledging receipt of the registered letter from Woodward enclosing copy of petition and citation calling attention to the fact that the citation was served on him (Woodward) on June 24, and service was returnable on July 22, 1940, was signed "The National Mutual Casualty Company, By Geo. C. Massey, Claim Department"; that while Massey was connected with the Claims Department, that all compensation claims were supposed to be under his (Tillotson's) supervision; that he did not know whether or not the company's agent, Villiva, at Beaumont, was a lawyer, that he had not delegated to Villiva any authority to represent the company in any matter; that the first he saw of the letter from Woodward transmitting the copy of the petition and citation to appellant was "when I discovered the citation and petition in the file last week"; that if the court would set aside the default judgment, the appellant would try the case at any time the court would set same for trial. On cross-examination: That he had some assistance in his office; that Mr. Finnegan was the Supervisor over him, and that Mr. Moore was manager of the claim department, mostly of automobile claims; that he tried to and usually did answer mail referable to his desk, "If I am in"; that "last week" was the first time he saw the letter from Woodward enclosing petition and citation to the company in the suit, that he could not tell exactly, "four or five days ago"; that the letter when it was received was answered by George C. Massey; that Woodward's letter called attention to the fact that the service was returnable July 22, 1940; that he assumed that Massey read the letter—that Massey was not present; that he did not know how Massey came to give attention to the letter, that ordinarily he did not do that kind of work; that when the letter (Woodward's) reached the office, he was in Miami, Oklahoma, attending court, and that he got back on the 29th, but Massey did not call his attention

to the letter; that one of the girls in his office gave him his mail and that he probably read it, but did not see the file in the case; that he "started feeling badly the week end of July 13th, and consulted a doctor"; that he would not say that he remained in his office and performed his work from June 29th to July 13th, but that he was in his office "quite a bit"; that along in June "we had a young man by the name of Elliot Finton who I turned a lot of these matters over to; probably I would have turned this over to him had I known of it, but I was gone. After he left, Mr. Massey, who was in the claims department, left the claims department and took over the duties as building manager, and since that time only Mr. Finnegan and myself have been in the office"; that "I found the citation in the file when I looked through it". In answer to the question, "How did you learn that a judgment had been rendered in this case," he said: "Well, when I went through the file and found the citation in there last week, and saw a copy of the petition, and the citation asking answer to be made on July 22; I immediately called Mr. Cecil at Beaumont"; that was "around the 7th"; that he received a copy of letter written by the Industrial Accident Board acknowledging its receipt of appellee's notice of appeal from the Board's award; that ordinarily letters of that kind went to his desk; that he paid no attention to the letter; that the first time he saw the letter was when he went completely through the file in the case; that he had "quite a bit" to do with handling the file in the case up to the time the suit was filed; that he could not explain what happened to the file that it did not get to his desk before the judgment was taken; that after he got sick about the 13th he did not return to his office until about the 20th; that on the 22nd he went to Oklahoma City on Monday, and returned on Wednesday evening the 24th; that Mr. Finnegan knew the file in the case was in the office; that so far as he knew there was no letter written concerning the case nor any attention given to the case from the date of service, June 27th, down to August 7th, 1940, when the default judgment was discovered; that he did not know of the letter from Walter C. Woodward transmitting the copy of the petition and the copy of citation to appellant, nor of Massey's letter from the Claim Department of appellant acknowledging the receipt of the letter containing the copy of

the petition and citation until August 7th. It appeared that appellant did not have an office in Texas. The letters referred to, the notice of appeal from the Board's award, and the letter from the Board to the parties giving notice of the notice of appeal were all in evidence. We have omitted much of the substance of the testimony of Mr. Tillotson, but think we have incorporated a sufficiency of same.

The company's home office was at Tulsa, Oklahoma; its chief counsel resided there. All citations in suits were sent there for attention. The company had excellent counsel at Beaumont who attended to cases in the territory where the instant suit was pending, but he received no notice of the suit until August 7th, two weeks after the judgment was rendered. Citation returnable July 22, 1940, reached the office at Tulsa June 29, 1940, and its receipt acknowledged; admittedly no attention was given this citation, other than place same in the files, the excuse for not giving attention being that "it was not called to my attention," by Assistant Superintendent of Claims, Tillotson, whose duty it was to handle such matters, though he admitted that he was in his office for at least fifty-fifty per cent of the time during the 25 days until appearance day where the suit was pending, he testifying that "I think it is correct to say that not a person there gave any attention to this matter from the date the citation was served (June 29th) until the 7th day of August, 1940, (two weeks after the default judgment was rendered)". Without further discussion of the evidence, we will say that the record, to our mind, shows inexcusable negligence in overlooking the matter.

Furthermore, the motion to set aside the judgment was filed on August 10, 1940, on Saturday before the Monday of the last week of the term of court. The hearing on the motion was held on Monday the 12th. The record discloses that the case was reached on call on appearance day, Tuesday, July 23rd. No answer had been filed. The court passed the case without action until Friday, the 26th, when the case was again called, and no answer having been filed, evidence for plaintiff was received and judgment rendered for appellee. Judge F. P. Adams, the regular judge of the court and who presided and rendered the judgment sought to be set aside, testified in substance: This is the last week of this term of court. The criminal dock-

et is set for this week. I believe the District Attorney told me that he had three cases ready for trial this week. The civil docket is also set for trial this week. I believe there are fourteen civil cases on the docket. There is a jury out now on a civil case tried last week which continued over into this week and is not yet concluded. "I can't see any reasonable probability at all to try the case if the matters before me are tried"; I presume there will be at least three cases tried, and so far as extending the term of court is concerned, before the term could be extended all parties must announce ready for trial, be in the midst of trial. I have another session of court convening immediately after this one in my district, Monday morning in Newton, and I have no other intention except to go there and open court. So it appeared almost if not certainly impossible for a trial of the case to be had at that term of the court. We judicially know that there are four other counties, besides Jasper county, in Judge Adams' judicial district, their terms of court convening after each other, each of four weeks, except Sabine County which has five weeks. So, if the motion to set aside the judgment should be granted, it certainly follows that the case could not be tried until after Judge Adams completes the circuit of his district and returned to Jasper for the next term of court there—a very considerable delay. A careful consideration of the evidence adduced by plaintiff on the trial at which the judgment was rendered and upon the hearing of the motion, convinces us that to reverse the judgment for the purpose of giving appellant a trial on the merits, and so delay the trial until the next term of the court would work injury and injustice to appellee. The rule seems to be settled that even though the failure to answer before judgment is not intentional or the result of conscious indifference on the defendant's part, but was due to a mistake or accident, and the motion to set aside the default judgment sets up a meritorious defense, it will not avail unless the motion is filed at a time when the granting of the motion will not occasion delay or otherwise work an injury to the plaintiff. Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126. This is a just rule and has been the law in Texas since announced in Dowell v. Winters, 20 Tex. 793, 794, until reannounced in the Craddock case, supra. We see no escape from the conclusion, in view of the record, that to have granted the motion would have resulted in delay that would have worked an injustice to appellee. The proposition is without merit and is overruled.

■ The second and third propositions complain that the default judgment was erroneous for in that it granted to appellee compensation at the rate of $20 per week in the absence of pleading to support the judgment. Appellee pleaded a wage rate of $5 per day, and his petition contained alternative pleas based upon the alleged rate of $5 per day under subsections 1, 2 and 3 of Section 1 of Article 8309, Revised Statutes, 1925. Appellee's petition also contained the following specific allegation: "But it is further shown in this connection that plaintiff's average weekly wage and the weekly compensation rate to which he was entitled under the Workmen's Compensation Laws of the State of Texas; and the said policy hereinafter set out, has been adjusted, agreed upon and fixed and settled between the parties to this suit, the plaintiff and the defendant; that his average weekly compensation rate has been agreed upon, settled and fixed at seventeen & 13/100 ($17.13) dollars per week; that the defendant has made payments to the plaintiff of compensation under said law and under said policy at said compensation rate of seventeen & 13/100 ($17.13) dollars per week, and therefore it is estopped from claiming this plaintiff was not an employee of the Sheehan Pipe Line Construction Company when injured, and not in the scope of his employment, and not covered by said policy, nor that he was not and is not entitled to compensation insurance at the rate of seventeen & 13/100 ($17.13) dollars per week."

Appellee, on the hearing July 26, 1940, when the default judgment was rendered, testified that appellant had paid him compensation from the date of the injury, September 29, 1939, to May 8, 1940, in the sum of $543.23, which was at the rate of $17.13 per week. This was in accordance with appellee's special plea of an agreed rate of weekly compensation. It was error to grant appellee compensation at the rate of $20 per week. Accordingly, we reform the judgment to accord with the pleading, that is, that he receive compensation at the rate of $17.13 per week. As reformed the judgment is affirmed. The costs of this appeal are taxed against appellee.